**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

GULFSTREAM NATURAL GAS          :
SYSTEM, LLC,
                                :
    Plaintiff,
                                :
vs.                                    CA 19-0270-KD-MU
                                :
TODD LE REDD and BETHANN
REDD,                           :

    Defendants.

## REPORT AND RECOMMENDATION

    This matter is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and S.D. Ala. GenLR 72(a)(2)(S), on the notice of removal (Doc. 1), Plaintiff's motion to remand (Doc. 6; *see also* Doc. 7 (brief in support of remand with attachments)), the response in opposition, with attachments, filed by the Redds (Doc. 13), and Plaintiff's reply (Doc. 15). Upon consideration of these pleadings, the Magistrate Judge recommends that the Court **GRANT** Plaintiff's motion to remand (Doc. 6).

## FINDINGS OF FACT

    Gulfstream Natural Gas System, LLC ("Gulfstream) filed an application for an order permitting entry on real property, pursuant to Ala.Code § 18-1A-51, against Defendants Todd Le Redd and Beth Ann Redd in the Circuit Court of Mobile County, Alabama on May 15, 2019. (Doc. 1, Exhibit A, Application for Order Permitting Entry).[1] The application

---

[1]    In describing the parties in its application for order permitting entry, Gulfstream described itself as "a natural gas company as defined by Section 2(a) of the Natural Gas Act, 15
(Continued)

sought entry upon real property identified by the Mobile County Revenue Commissioner as parcel numbers 47-01-40-0-004-010.XXX and 47-01-40-0-004-011.XXX, as more fully described in the attached statutory warranty deed,[2] "to determine if the Property is suitable and within the power of the Plaintiff to take for public use in the construction and/or expansion of [its natural gas] Pipeline." (*Id.* at ¶¶ 2, 7 & 11.)    In support of its request for an order permitting entry on the Redds' property Gulfstream averred the following:

> 12.    Plaintiff avers that depending on the results of the suitability studies, said construction and/or expansion of the Pipeline or its app[urtenances] could take place upon the Property and/or the Property will be used for temporary workspace in the construction and/or expansion of the Pipeline.

> 13.    Plaintiff avers that the suitability studies would include, but are not limited to, surveys, examinations, photographs, soundings, borings and samplings.

> 14.    Plaintiff avers that said suitability studies will possibly be determinative of what route the Pipeline will take and are needed for Plaintiff to obtain the Certificate from the FERC.

> 15.    Plaintiff avers that it has taken reasonable efforts to obtain lawful entry under Ala.Code § 18-1A-50 (1975), as amended, and that such efforts have been denied by the Defendants.[3]

> 16.    Plaintiff avers that in view of the Defendants' denial of lawful entry, any reasonable efforts made by Plaintiff to obtain lawful entry would be futile absent an Order Permitting Entry from the Court.

---

U.S.C. Sec. 717(a)(6)" and, further, that it "qualifies as a Condemnor as defined by Ala.Code § 18-1A-1[.]" (*Id.* at ¶ 1).

[2]    The attached warranty deed reflects that the Redds purchased both parcels of land for $12,500.00 on January 24, 2013. (*See id.*).

[3]    The Plaintiff's efforts are reflected in the email correspondence (spanning mid-December 2018 through May 13, 2019) attached to the Defendants' notice of removal. (*See* Doc. 1, Exhibit C).

17.    Plaintiff avers that it submits to the Court's preliminary assessment of the probable amount that will fairly compensate the Defendants for damages, for physical injury to the Property, and for substantial interference with the Property's possession or use, found likely to be caused by the entry and activities authorized by the Order Permitting Entry.

18.    Plaintiff avers that it will obtain a bond for double the amount of such preliminary assessment made by the Court with good and sufficient sureties to pay such damages as the Defendants may sustain.

(Doc. 1, Exhibit A, Application for Order Permitting Entry, at ¶¶ 12-18). Finally, in the Application, Gulfstream demanded judgment against the Redds as follows: "(i) for an order permitting Plaintiff entry upon the Property, located in Coden, Mobile County, Alabama, for the purposes of conducting suitability studies to determine if the Property is suitable and within the power of the Plaintiff to take for public use; (ii) for an order describing the purpose of the entry and setting forth the nature and scope of activities the Court determines are reasonable, necessary and authorized to be made upon the Property; (iii) for an order assessing the probable amount that will fairly compensate the Defendants and setting a bond in an amount double the amount of such preliminary assessment; (iv) for an award of attorney fees, if permitted by law; (v) for the reasonable costs and disbursements of this action; and (vi) for such other and further relief as this Court may deem just and proper." (*Id.* at 5-6).

On or about June 7, 2019, Todd Le Redd and Beth Ann Redd filed a responsive affidavit in the Circuit Court Mobile County, Alabama (Doc. 1, Exhibit A, AFFIDAVIT)[4] and,

---

[4]    This affidavit reads, in its entirety, as follows:

1.    As the owners and residents at properties located in Coden, Mobile County, AL[,] [d]escribed as parcels 47 01 40 0 004 010.XXX and 47

(Continued)

01 40 0 004 011.XXX in summons[,] and [having] refus[ed] to allow Gulfstream/Williams pipeline entry onto the properties.

2. Defendants, Todd Le Redd and BethAnn Redd . . ., have been property owners and residents of Mobile County for almost a decade. The Redds purchased their property with the vision and aspiration of not only making the land their lifelong home, but also creating an ocean-view retreat for those who would like to experience and enjoy a rustic camping getaway located in a portion of Coden, Alabama still greatly untouched by the crass and rugged hand of man. Unfortunately, in the past six (6) months, the Redds have had to refuse parties wishing to visit their property due to the continuing uncertainty and the ambiguity of the future stemming from the daunting and real threat of an encroachment and unjust taking of said property by Plaintiff, Williams Gulfstream . . .[,] for a proposed pipeline.

3. Pursuant to discussions had between Plaintiff and the Redds, it is understood that the pipeline project will encompass the entirety of the Redds four (4) acre plot of land for the transport of deleterious substance. To date, the Redds have been reasonable in their communications and offer of settlement with the Plaintiff, as defined by Ala.Code § 18-1A-55 and 18-1A-23. Recent communications with the Plaintiff even showed the promise of negotiating an agreement between the two parties. However, prior to responding to the Redd[]s['] proposal with a legitimate answer, Plaintiff filed the Writ of Entry at issue in this action. []

4. The Redds do not wish to lose their property or the rights thereto. They have built a home and a business on their property, which they have anticipated will prosper and bring revenue to the city and the county in the coming years. Furthermore, the Redds have the right, under the circumstances, to invoke the rights granted to them by the Fifth Amendment of the Constitution of the United States [], which prohibits the unjust taking of private property from a landowner, and the Fifth (sic) Amendment of the Constitution, which makes the previous mentioned Amendment applicable in each respective state, including the Great State of Alabama.

5. Based on information and belief, there is a real threat that the Redds will not be compensated for their property. [] Plaintiff has yet to pay for the rights, liberties, and properties taken from other landowners subsequent to the granting of an Eminent Domain granting by the Court. [] Based on these reports, the Redds will not be taken advantage of by a big corporation.

6. Whereas, based on the above, the Redds pray the Court will allow the Plaintiff to be unjustly enriched by exploiting this Court's authority while wasting the Court's time and judicial resources. Furthermore, the Redds pray the Court [will] allow the parties to continue their

(Continued)

4

that same day, a notice of removal in this Court (Doc. 1). In the notice of removal, the

Redds invoke 28 U.S.C. §§ 1331, 1332(a)(1), 1441 and 1446 (Doc. 1, at 1), and

specifically address jurisdiction under §§ 1331 and 1332(a)(1), as follows:

### DIVERSITY (SIC) JURISDICTION UNDER 28 U.S.C. § 1331

7.      Defendants would like to have this moved because of the Constitutionality of this civil action where the Plaintiff is using Section 2(a) of the Natural Gas Act, 15 U.S.C. Sec. 717(a)(6).

### DIVERSITY JURISDICITON UNDER 28 U.S.C. § 1332(a)

8.      This court has jurisdiction over this matter under **Diversity 28 U.S.C.** § 1332(a) because of complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

9.      Plaintiff is a corporation and legal entity organized and existing under the laws of the State of Delaware and principal place of business located at 9 Greenway Plaza, Houston, Texas 77046.

10.      Defendants are from the state of Alabama, domiciled at property in question.

(*Id.* at ¶¶ 7-10). This is the sum total of the Redds' jurisdictional analysis and none of

the documents attached to the notice of removal supplies any reasonable, non-

conclusory indicia of value of the subject property, save for the Statutory Warranty

Deed, which establishes that the Defendants purchased both parcels of land on January

24, 2013 for $12,500.00 (Doc. 1, Exhibit A, STATUTORY WARRANTY DEED), an

amount the Redds "doubled-down" on, under penalty of perjury, in their IFP motion (also

---

negotiation[s] in order to facilitate a compromise to include compensation for use of the land for surveying purposes, and in the alternative, the Court determine just compensation for the use of the property for surveying purposes without allowing the Plaintiff to invoke Eminent Domain as an instrument of taking at this time*.*

(*Id.*)

(Continued)

filed on June 7, 2019) when they estimated the value of both parcels of land to be $12,500.00 (Doc. 2, at 2).[5]

Gulfstream filed its motion to remand on July 3, 2019. (Doc. 7). As an initial matter, Plaintiff contends that this Court lacks subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because it (Plaintiff) has not filed an eminent domain action pursuant to the Natural Gas Act, 15 U.S.C. § 717f(h) but, instead, it simply filed an application for order permitting entry in accordance with Alabama law, specifically Ala. Code § 18-1A-51. (*See id.* at 5-7.) In addition, Gulfstream contends that this Court lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a) both because the issue of removal of this matter is not ripe for consideration by the Court (*id.* at 7-11) and because the Redds have not demonstrated by a preponderance of the evidence that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs (*id.* at 11-14).

The Defendants' response in opposition reads almost in its entirety as follows:

> Plaintiffs are stating in the Motion to Remand that Defendants['] parcels of land do not exceed the $75,000 as stated in **28 U.S. Code § 1332(a)**. The Plaintiff states that the county tax appraisal value and the vacant land appraisal both are less than this amount. Plaintiff[] ha[s] never sent (i) a Notice of Intent to Appraise[,] (ii) physically appraised the property[,] 12 **U.S. Code § 3356(b)**, (iii) given proper value with Defendants having (a) more than 400 linear feet of ocean view that will never be obstructed because of the public park (and it[]s amenities for permanent public water access) being directly in front of Defendants['] property, (b) more than 1000 trees valued at $200 or more each, (c) a live oak that is deemed priceless, (d) a fresh water spring[,] (e) palm trees that have been on the property since the 1950s, (iv) the parcels of property they used for appraisal were over two years old and not of ocean view[,] (v) no value has been given or even discussed about relocation costs, as have been with other landowners, (vi) replacement cost with the amenities

---

[5]    The undersigned makes reference to the value of the Defendants' real property here only because of the Defendants' stance in response to the Plaintiff's motion to remand that the fair market value of their property exceeds the jurisdictional minimum and is the amount "at issue" in this action. (*See* Doc. 13.)

that are present within the parcels of property. Other items not included within Plaintiff[']s Motion to Remand are items such as business income loss from the campgrounds, the damages to the business from the loss of ability to continue the campground reservations and emotional stability of having a lifetime home for retirement. The Plaintiff is seeking to acquire the land for less than a fair price[.] Defendants are wishing to have the courts note that Plaintiff[] ha[s] taken lands by condemnation and have not paid for it in some cases, or taken it before coming to an agreement and Defendants are wanting to protect their personal and business investment within this transaction.

Plaintiffs are not in compliance with **15 U.S. Code § 717f(h),** never contacting with a contract to purchase or obtain property from Defendants. Defendants have remained open to contact with Plaintiff[], even when Plaintiff[] w[as] continually threatening eminent domain, rather than discussing a contract as Defendants requested. Contrary to the Plaintiff's assertion, the use and value of the property in question does amount to more than $3,000.

Defendants also plead with **28 U.S.C. § 1331 and 42 U.S.C. § 1983,** giving the court jurisdiction over all civil actions with Constitutional laws, where one question in this action is the fifth amendment.

Plaintiffs have not made a fair and reasonable effort to obtain the parcels of property before starting the court action to obtain the parcels of property, unlike **49 CFR § 24.102** states. Defendants are looking for just compensation and payment prior to Plaintiff[] taking possession as in **49 CFR § 24.102(j)** since there is evidence that Plaintiff[] ha[s] not paid in some condemnation actions prior.

The Defendants are not denying the inevitability of the pipeline gaining the eminent domain and condemnation, just as the defendants in *Columbia Gas Transmission, LLC v. 14.96 Acres,* CIVIL ACTION NO. 2:14-cv-27773 (S.D. W.Va. Jun. 16, 2015). Defendants are only asking for proper compensation and payment not only in the disruption of their peaceful use and enjoyment of the property, but also in any condemnation action that may follow.

.      .      .

1. The Plaintiff is stating within the Motion to Remand that Defendants['] parcels of property worth are not in excess of $75,000. They have had an appraisal done after stating they did not need access to do an appraisal within an email from May 3, 2019 with Michael Clifford, thus not giving them a proper valuation of the parcels of property amenities.

Defendants did not sign or agree to a waiver of valuation, **Ala.Code § 18-1A-22(c)**. []

2. The parcels of property have more than 400 feet of ocean view property that was not figured into the value of the 4 acres parcels of property. The view will never be obstructed and the property having ocean access with the public park gives the Defendants['] parcels of property that could be deemed ocean front. []

3. There are trees on the parcels of property that have not been touched for possibly a hundred years and are valued at $200 or more each for the pine trees and even greater for the palm trees and live oak being priceless and immovable.

4. The appraisals that were done on the parcels of property were done with two and three year old property sales that are not equal to the parcels of property in question and are not done within Fannie Mae or VA guidelines of 6 months to a year as in *Riegel v. Twp. of Edison Block 415, Lot 4.A[,] Docket No. 015034-2013 (N.J. Tax Dec. 26, 2014)*. The market for sales that are occurring now will still not include ocean view parcels of property since the ocean view is not available, however, bay view is available and list of sales/available for sale is attached. Defendants were looking for like kind replacement, with view and amenities, as to create the same business goodwill. []

5. There ha[s] been no discussion of movement or relocation costs, since they have stated within the appraisals that our off grid (solar/wind powered, recycling, composting, Eco-friendly) tiny house buildings are deemed by them as modular, however are stick built. Another landowner stated they were offered more than $30,000 for relocation for a two year period, and another location to reside while relocating. The costs associated with relocation or movement are upwards of $15,000 a building and the buildings cannot be lived in while relocation is taking place. The buildings and land for both locations have to be prepped and ready for the building to be placed which is not included in the building movement cost, Costal Building Movers.

6. The parcels of land in question have amenities that are not available [on] other parcels of property that are similar along the gulf coast within other states. Kuchle Realty Co. v. Commonwealth[,] NO. 2016-CA-000828-MR, at *5 (Ky. Ct. App. Jun. 1, 2018)[.] []

7. Defendants had an off grid campground that would in the future be a very large business and retreat for multiple groups[,] [i]ncluding[,] but not exclusive to[,] Mardi Gras groups, travelers that have stayed in the past year, church groups that wanted to unplug and reconnect with

nature, fishermen that take advantage of the year[-]long fishing and fishing rodeos within the area that do not have other places to just tent camp and take in their day with the water view and beautiful scenery with easy access into the ninth largest ocean basin in the world, the Gulf of Mexico.

The layout of the business, partial list of customers and partial list of events that occur in the area that were within the business model would be inclusive of business goodwill loss since the pipeline sent a copy of the new layout taking the parcels of property and deprived the Defendants of the opportunity of an eco[-]friendly off[-]grid campground. **Ala. Code § 23-1-282**, **42 U.S.C. § 1983**.  With this in question, all the specific clearing, the time involved in building up the customer base, the building of the buildings to be used, the studying of the ways to make everything natural to teach customers how they can make their life (sic) more eco-friendly, and the cost of handpicking and removal to keep the natural eco-friendly environment[.] []

8. The emotional aspect of not knowing when they will invoke eminent domain and remove Defendants from their home has made them very upset and unable to continue with their goals, having to cancel customers and group visits. This pain and suffering has caused them to worry about coming home and finding being served eminent domain and having no place to enjoy their rights as given in the Constitution.

9. Defendants in this case are only looking for just compensation as entitled to then with the property including business losses, fixtures and equipment, relocation benefits and other fees not to be limited to future costs and appraisal fees from the actions of the Plaintiffs, as entitled to the[m] in the Fifth Amendment.

10. Plaintiffs have continually stated to Defendants that they will invoke legal action, and inferred an application of eminent domain, without offering a contract to acquire the parcels of property or offer fair compensation to acquire necessary parcels of property. Necessary parcels of property are over $3,000 which gives this court jurisdiction over this case as stated in **15 U.S. Code § 717f(h).**

11. Defendants feel with Plaintiff[']s actions they are wanting to quick-take the parcels of property by eminent domain without paying for months to years and not wanting to pay just compensation as stated within the fifth amendment, **28 U.S.C. § 1331**, *Lynda Like vs Transcontinental Gas Pipe Line Co., LLC, (Case No. 18-1206, 2019), Givens v. Mountain Valley Pipeline, LLC (7:2019cv00221, 2019), Columbia Gas Transmission, L[LC] v. Booth,* Case No. 1:16-CV-1418, at *15 (N.D.

Ohio Dec. 22, 2016)[.] Attached is FERC Application filed by Plaintiff[]
on June 3, 2019 . . . .

12. Defendants were having open communication with Plaintiff[] and
Plaintiff[] w[as] coercive with pushing eminent domain and court
proceedings rather than continuing communication to gain parcels of
property per **49 CFR § 24.102.** Defendants were seeking to not
congest the courts with this case by trying to negotiate with Plaintiff[] in
accordance with **<u>42 U.S.C. § 4651</u>.**

(Doc. 13, at 2-5).

Gulfstream filed its reply on August 7, 2019. (Doc. 15).  In its reply, Plaintiff

essentially contends that the Defendants' conclusory musings about the fair market

value of their property are misplaced because "this case does not involve the purchase

or condemnation of Defendants' property[;]" instead, as Gulfstream notes, it is "only

seeking to enter upon the property to conduct minimally invasive studies" such that

there is either "no amount in controversy" or the amount in controversy "is nominal

only." (*Id.* at 2.)

## <u>CONCLUSIONS OF LAW</u>

### A.     <u>Jurisdiction in General</u>.

In general, removal of a case from state court to federal court is proper if the case

originally could have been brought in federal court. *See* 28 U.S.C. § 1441(a). However,

"[i]f at any time before final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removing Defendants

must bear "the burden of demonstrating federal jurisdiction." *Triggs v. John Crump*

*Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted); *see also*

*Friedman v. New York Life Ins. Co.,* 410 F.3d 1350, 1353 (11th Cir. 2005) ("As this Court

noted in *Kirkland v. Midland Mortgage Co.,* 243 F.3d 1277 (11th Cir. 2001), '[i]n removal

cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists.'"); *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction."). Moreover, "[f]ederal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand." *Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (citation omitted), *partially abrogated on other grounds as recognized in Overlook Gardens Properties, LLC v. ORIX USA, L.P.,* 927 F.3d 1194 (11th Cir. 2019); *see also Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir.) ("[R]emoval statutes should be construed narrowly, with doubts resolved against removal."), *cert. denied*, 540 U.S. 877, 124 S.Ct. 277, 157 L.Ed.2d 140 (2003); *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" (internal citations omitted)). Stated differently, because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). Indeed,

"[b]ecause removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all jurisdictional doubts being resolved in favor of remand to state court." *Brown v. Endo Pharmaceuticals, Inc.,* 38 F.Supp.3d 1312, 1318 (S.D. Ala. 2014) (citation omitted).

For the reasons set forth below, the removing Defendants (the Redds) have failed to satisfy their burden of establishing federal jurisdiction, whether federal question jurisdiction (§ 1331) or diversity jurisdiction (§ 1332). *Compare Stillwell v. Allstate Ins. Co.,* 663 F.3d 1329, 1332 (11th Cir. 2011) ("An action filed in state court may be removed to federal court based upon diversity or federal question jurisdiction.") *with CitiMortgage, Inc. v. Dhinoja,* 705 F.Supp.2d 1378, 1381 (N.D. Ga. 2010) ("Under 28 U.S.C. § 1331, a federal court may exercise jurisdiction over a case if it presents a question of federal law. . . . Another basis of removal jurisdiction is diversity of citizenship under 28 U.S.C. § 1332.").

**B.    Federal Question Jurisdiction**.

Title 28 U.S.C. § 1331 provides that federal courts possess "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* "[U]nless the face of a ***plaintiff's complaint*** states a federal question, a defendant may not remove a case to federal court on [a federal question] basis, even though a possible defense might involve a federal question." *Ervast v. Flexible Products Co.,* 346 F.3d 1007, 1012 (11th Cir. 2003) (emphasis supplied), *cert. denied,* 543 U.S. 808, 125 S.Ct. 30, 160 L.Ed.2d 10 (2004); *see also Jefferson County, Alabama v. Acker,* 527 U.S. 423, 430-431, 119 S.Ct. 2069, 2075, 144 L.Ed.2d 408 (1999) ("To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a

properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal."); *see Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.").[6] "Nor can federal jurisdiction rest upon an actual or anticipated counterclaim." *Vaden v. Discover Bank,* 556 U.S. 49, 60, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009); *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 830, 122 S.Ct. 1889, 1893, 153 L.Ed.2d 13 (2002) ("[T]he well-pleaded complaint rule, properly understood, [does not] allow[] a counterclaim to serve as the basis for a district court's 'arising under' jurisdiction."); *HSBC Bank USA Nat'l Ass'n v. Bobrowski,* 2015 WL 4506824, *2 (M.D. Fla. July 23, 2015) ("[T]he assertion of federal counterclaims is insufficient to confer federal question jurisdiction under § 1331."). Instead, "[a] well-pleaded complaint presents a federal question where it 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001), quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856, 77 L. Ed. 2d 420 (1983); *see also Cornelius v. U.S. Bank Nat'l Ass'n,* 452 Fed.Appx. 863, 865 (11th Cir. Nov. 29, 2011) (recognizing that under § 1331, "a federal court will have jurisdiction only when the plaintiff's cause of action is conferred by federal law or when there is some

---

[6]     Under the well-pleaded complaint rule, the plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." 482 U.S. at 392, 107 S.Ct. at 2429 (footnote omitted).

'contested[, substantial] federal issue' and the exercise of jurisdiction is 'consistent with congressional judgment about the sound division of labor between state and federal courts . . . .' *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 313, 125 S.Ct. 2363, 162 I.Ed.2d 257 (2005)."")); *see Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) ("'[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'"). In addition, it is clear that "where a complaint is 'devoid of a single citation to a Constitutional provision, a federal statute, or a recognized theory of common law as the basis for the allegation that the [plaintiff's] cause of action arises under federal law,'" the allegations are insufficient to establish jurisdiction under § 1331. *Scarborough v. Carotex Constr., Inc.,* 420 Fed.Appx. 870, 873 (11th Cir. Mar. 15, 2011).

Here, there is nothing to indicate that Gulfstream's application for order permitting entry upon identified property (Doc. 1, Exhibit A, Application for Order Permitting Entry) raises any federal claim or is anything more than an action allowable under Alabama law to secure "the *precondemnation* right to enter [] property . . . to conduct various examinations and surveys." *Walker v. Gateway Pipeline Co*., 601 So.2d 970, 975 (Ala. 1992) (emphasis in original); *see also* Ala.Code § 18-1A-51(a) ("If reasonable efforts to accomplish a lawful entry or to perform authorized activities upon real property under Section 18-1A-50 have been obstructed or denied or would be futile, the condemnor may apply to the circuit court in the county where the property or any part is located for an order permitting entry."). Although Gulfstream's application references the Natural Gas Act, specifically 15 U.S.C. § 717(a)(6), in describing itself as party Plaintiff (*see* Doc. 1,

Exhibit A, Application for Order Permitting Entry, at 1), nothing about this definitional citation constitutes a basis for the removing Defendants' conclusory suggestion that Gulfstream's "cause of action" arises under federal law. *Cf. Scarborough, supra.* Indeed, this definitional citation to the Natural Gas Act is nothing beyond recognition that Gulfstream is a federally regulated party, which is insufficient to raise a substantial federal question. *See Cornelius, supra,* 452 Fed.Appx. at 865 ("The mere presence of a federally regulated defendant does not of itself raise a substantial federal question.").

The Redds' citation to 15 U.S.C. § 717f(h) and the Takings Clause of the Fifth Amendment (along with 42 U.S.C. § 1983) in their response in opposition to Gulfstream's motion to remand (*see* Doc. 13) does nothing to change the state-law nature of Plaintiff's claim and, indeed, those citations to (or reliance upon) federal law appear to be in the nature of asserted defenses and/or counterclaims to the underlying state-court action/application (*see id.*). , "A defense that raises a federal question is inadequate to confer federal jurisdiction[,]" *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986),[7] nor can a counterclaim which

---

[7]    It is all too clear that "when a federal statute wholly displaces the state-law cause of action through complete preemption[,]" the state cause of action can be removed. *Beneficial Nat'l Bank v. Anderson, supra,* 539 U.S. at 8, 123 S.Ct. at 2063; *see also Vaden, supra,* 556 U.S. at 60, 129 S.Ct. at 1273 ("A *complaint* purporting to rest on state law, we have recognized, can be recharacterized as one 'arising under' federal law if the law governing the complaint is exclusively federal. . . . Under this so-called 'complete preemption doctrine,' a plaintiff's 'state cause of action [may be recast] as a federal claims for relief, making [its] removal [by the defendant] proper on the basis of federal question jurisdiction.'") (emphasis in original); *Gables Ins. Recovery, Inc. v. Blue Cross and Blue Shield of Florida, Inc.,* 813 F.3d 1333, 1337 (11th Cir. 2015) ("'[C]omplete preemption is a narrow exception to the well-pleaded complaint rule and exists where the preemptive force of a federal statute is so extraordinary that it converts an ordinary state law claim into a statutory federal claim.'" (citations omitted)), *cert. denied, ___ U.S. , 137 S.Ct. 296, 196 L.Ed.2d 215 (2016); *compare id. with Reed v. U. S. Bank Nat'l Ass'n,* 2017 WL 2001998, *1 (M.D. Fla. May 11, 2017) (recognizing that the Supreme Court had "clarified" that a cause of action can arise under federal law in one of three ways, the third way being "where 'a federal cause of action completely preempts a state cause of action.'"). The Defendants nowhere (Continued)

appears in a defendant's pleadings (as opposed to a Plaintiff's complaint/action) support

removal based upon federal question jurisdiction,[8] *see Vaden, supra.*[9]  Accordingly,

---

specifically intone the doctrine of complete preemption in either their notice of removal (*see* Doc. 1) or their brief in opposition to the motion to remand (*see* Doc. 13), and, therefore, this avenue for "arising under" jurisdiction simply does not exist. Nevertheless, even if the *pro se* Defendants' citation to 15 U.S.C. § 717f(h) was intended as an attempt to invoke the doctrine of "complete preemption," that attempt necessarily fails inasmuch as the Natural Gas Act does not give rise to complete preemption, *County of Volusia v. Florida Gas Transmission Co., LLC,* 2008 WL 11335046, *3 (M.D. Fla. Aug. 14, 2008), as the language of § 717f(h) itself establishes, 28 U.S.C. § 717f(h) ("When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to the right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, *or in the State courts.*" (emphasis supplied)). Besides, the Defendant's citation to and/or reliance upon § 717f(h) is unavailing in this case in particular given that Gulfstream's application for order permitting entry is not indicative of Plaintiff's exercise of the right to eminent domain (to which § 717f(h) addresses itself) but, instead, is an exercise of its pre-condemnation right to enter property to conduct various testing, etc., as allowed by Alabama law but nowhere addressed in the Natural Gas Act.

[8]     The Defendants' citations to 12 U.S.C. § 3356(b), 49 C.F.R. § 24.102, and 42 U.S.C. § 4651 are also unavailing because the invocation of those statutes and regulations are in the nature of asserted counterclaims and/or defenses.

[9]     The undersigned parenthetically gives some ink to the Defendants' insistence that "one question in this action is the fifth amendment." (Doc. 13, at 2.; *compare id. with* Doc. 1, Exhibit A, AFFIDAVIT, at 2 ("[T]he Redds have the right, under the circumstances, to invoke the rights granted to them by the Fifth Amendment of the Constitution of the United States, which prohibits the unjust taking of private property from a landowner[.]")). As made clear by the Defendants' filings, the Takings Clause contained in the Fifth Amendment ("nor shall private property be taken for public use without just compensation") "presents" as an issue solely due to the Defendants' action in raising it as a counterclaim, which is insufficient to support removal based on federal question jurisdiction. Besides, even in state court, such a counterclaim (or freestanding claim brought by the Redds in a separate proceeding) would not be "ripe" because no action has been taken with respect to Gulfstream's pre-condemnation application for order permitting entry, much less has there been any exercise of eminent dominant by Gulfstream (instead, the Defendants simply allege that they "anticipate" this action by Plaintiff), so as to establish a "final" taking of the Defendants' property. *Cf., e.g., Knick v. Township of Scott, Pennsylvania,* 139 S.Ct. 2162, 2168-2170, 204 I.Ed.2d 558 (2019) (recognizing the holding in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a case in which a property developer brought a takings claim under § 1983 against a zoning board that had rejected the developer's proposal for a new subdivision, that the developer's Fifth Amendment "takings" claim was not ripe for two reasons, (Continued)

because an application/action to secure the pre-condemnation right to enter property to conduct various tests and studies, like the one brought by Gulfstream, is exclusively a matter of state law, and the defendants have not otherwise established that Plaintiff's "well-pleaded complaint presents a federal question, they have failed to establish federal question jurisdiction under § 1331." *Bobrowski, supra,* at *2; *cf. CitiMortgage, Inc., supra,* 705 F.Supp.2d at 1381 ("[E]ven though Dhinoja's notice of removal alleges that Georgia's dispossessory process violates his rights under the United States Constitution, a Court's inquiry into the presence of federal question jurisdiction is limited to the allegations found in the plaintiff's well-pleaded complaint. If a federal question is not presented on the face of the complaint, 'it is no substitute that the defendant is almost certain to raise a federal defense.' Thus, it is immaterial that Dhinoja alleges that his constitutional rights have been violated. Consequently, the Court finds that there is no federal question presented such that this Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.") (internal citation omitted). Accordingly, this Court lacks federal question jurisdiction under § 1331.

C. **Diversity Jurisdiction.**

---

namely, because the developer had an opportunity to seek a variance from the appeals board such that the taking was not yet final and the developer had no constitutional claim because he had not sought compensation through State procedures; the Supreme Court then did not question the validity of *Williamson*'s first ripeness holding but did overrule the second "ripeness" holding, finding that "a property owner has a claim for a violation of the Takings Clause as soon as a **government** takes his property for public use without paying for it." (emphasis supplied)).

(Continued)

Where removal jurisdiction is predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332,[10] the removing parties bear the burden of establishing complete diversity of citizenship, that is, that the plaintiff is diverse from all the defendants, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, must establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996) ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $[75,000] jurisdictional requirement."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *see also Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) ("If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement.'"); *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003) ("[W]here jurisdiction is based on a claim for indeterminate damages, . . . the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum.").

Mere diversity of citizenship, which is apparent from the notice of removal (Doc. 1, at ¶¶ 9 & 10), is not sufficient to create jurisdiction under § 1332 because "the court is

---

[10]     Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).

obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted). Again, "[w]hen, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Pate v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald v. Besam Automated Entrance Systems*, 282 F.Supp.2d 1309, 1314 (S.D. Ala. 2003) ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled to deference."), *aff'd,* 107 Fed.Appx. 893 (11th Cir. Jun. 4, 2004). And because the Defendants removed this case under the first paragraph of Section 1446(b)[11] (*see* Doc. 1, ¶ 12 ("This Notice of Removal has been filed within 30 days of the date that Tood Le Redd and BethAnn Redd were served with the summons or Complaint on this matter. Removal is therefore timely in accordance with 28 U.S.C. § 1446(b)[.]")), the Eleventh Circuit's decision in *Roe, supra*, guides the undersigned's analysis. *See* 613

---

[11]     The first paragraph of 28 U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

*Id.*

F.3d at 1062 (characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand"). In *Roe*, the Eleventh Circuit stated:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. [*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir.2010).] Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F.Supp.2d 995, 999 (M.D. Ala. 2009)); s*ee also Williams*[*v. Best Buy Co., Inc.*], 269 F.3d [1316,] 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-1062.

The undersigned would be remiss in failing to recognize, as a starting point, that nowhere in its application for order permitting entry on land does Gulfstream seek any amount of damages from the Defendants, other than attorney's fees ("if permitted by law"); rather, Plaintiff principally seeks to have the state trial court set a bond in an amount double to its (the court's) preliminary assessment of the probable amount that will compensate the Redds for damages for physical injury to property, and for substantial interference with its possession or use, found likely to be caused by the entry and

activities authorized by the order (*see* Doc. 1, Exhibit A, Application for Order Permitting Entry). And while the Plaintiff's initial argument that it is only seeking to enforce its statutory right to enter upon the Redds' property and demands no damages, such that there is no amount in controversy (*see* Doc. 7, at 7-11), certainly has some facial appeal, the undersigned chooses not to enter the "weeds" that surrounds Gulfstream's application for order permitting entry—those "weeds" being, more specifically, the contents of Ala.Code §§ 18-1A-50-54 and what those statutes actually mean—both because Plaintiff's application does contain a demand for attorney's fees, albeit an "uncertain" request,[12] and, most importantly, because an application for order permitting entry, as was filed by Gulfstream in this case, has been recognized by the Alabama Supreme Court for more than two decades as an "action" or "proceeding" to "secure the *precondemnation* right to enter the property . . . to conduct various examinations and surveys." *Walker, supra,* 601 So.2d 975; *compare id. with, e.g.,* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, **any civil action** brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and

---

[12] "The general rule is that attorneys' fees do not count towards the amount in controversy unless they are allowed for by statute or contract." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808 n.4 (11th Cir. 2003) (citation omitted). And while Gulfstream's demand for attorney's fees is a bit "uncertain," it constitutes a demand that would have some value if attorney's fees are allowable by statute. Unfortunately, neither Plaintiff nor the Defendants have cited a statute (or case law) that speaks to whether Gulfstream can recover attorney's fees relative to its application for order permitting entry on the Defendants' property. With no assistance from the parties, this Court should not speculate whether attorney's fees are statutorily recoverable in this instance. At the same time, however, this Court can certainly reasonably infer, based on the contents of the application, that the amount of attorney's fees attributable to the filing of the application (if statutorily recoverable) would certainly be nominal.

(Continued)

division embracing where such action is pending." (emphasis supplied)).[13] Therefore, the undersigned considers whether the Defendants have established by a preponderance of the evidence that the amount in controversy in Plaintiff's pre-condemnation action seeking to enter the Redds' property to perform examinations, surveys, etc. exceeds $75,000, exclusive of interest and costs. *See, e.g., Roe, supra,* 613 F.3d at 1061.

Turning to Gulfstream's application for order permitting entry, it is certainly not facially apparent that the amount in controversy exceeds $75,000 and, indeed, the amount placed in controversy by the application is wholly dependent upon findings to be made by the Mobile County Circuit Court (*see* Doc. 1, Exhibit A, Application for Order Permitting Entry, at 5 & 6). Moreover, the Defendants' notice of removal contains only a conclusory assertion that the amount in controversy exceeds the jurisdictional minimum (*see* Doc. 1, at ¶ 8 ("This court has jurisdiction over this matter under **Diversity 28 U.S.C. § 1332(a) because of complete diversity of citizenship between Plaintiff and Defendants *and the amount in controversy exceeds $75,000.*"** (some emphasis supplied)). As the Eleventh Circuit has found, a bare and conclusory assertion is insufficient to carry a defendant's burden of proving that the amount in controversy is satisfied. *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319-20 (11th Cir. 2001) ("We reiterate that the burden of proving jurisdiction lies with the removing defendant. A conclusory allegation in the notice of removal that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion is insufficient to meet the defendant's burden."). Thus,

---

[13]      Stated somewhat differently, given the nature of Gulfstream's pre-condemnation action seeking entry upon the Defendants' real property, the specter of damages to the owners of the property on account of that entry (and the surveys and examinations, etc., to be conducted) is certainly at issue.

Defendants' notice of removal does not establish that the amount in controversy exceeds $75,000.

The Defendants' evidence submitted in response to Plaintiff's motion to remand fails to remedy the deficient notice of removal and any purported factual showing therein (*see* Doc. 13) because it is directed to refuting Plaintiff's statement in the motion to remand that the subject property (both parcels) is not worth in excess of $75,000 (*see id.* at 3-4) by citing to evidence they claim impacts the valuation of their property and by counterclaiming for damages (e.g., damages for pain and suffering) (*see id.*). The Defendants' arguments, however, do not establish that the amount in controversy exceeds $75,000.00. As for the counterclaim argument, this Court and other district courts in the Eleventh Circuit have specifically determined that a defendant's counterclaim cannot "be considered in determining the amount in controversy [in the context of removal jurisdiction]." *Merion Realty Management, L.L.C. v. Henry,* 2010 WL 5140571, *4 (S.D. Ala. Nov. 19, 2010), *report and recommendation adopted,* 2010 WL 5339425 (S.D. Ala. Dec. 9, 2010); *see also, e.g., Conference Am., Inc. v. Q.E.D. Int'l, Inc.,* 50 F.Supp.2d 1239, 1241 (M.D. Ala. 1999) ("[T]he court finds that a counterclaim should not be considered when determining whether the amount-in-controversy requirement of § 1332 is satisfied in the context of removal.").[14] Moreover, the valuation arguments are also unavailing because Plaintiff has not filed a statutory condemnation or eminent domain action under Alabama law seeking to "take" the Defendants' real property, which would likely place the fair market value of that property at issue; instead, Plaintiff is simply

---

[14]     Courts have reached this conclusion given the Eleventh Circuit's clear direction that district courts "must look to *plaintiff's claim* to determine whether removal [is] appropriate." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (emphasis supplied).

seeking to exercise its pre-condemnation statutory right, under Alabama law, to conduct various examinations, surveys, etc., activities which the Defendants have failed to establish must be given a monetary value solely by reference to (and equal to) the fair market value of their property. The statute makes clear that the circuit court is responsible for setting a bond in an amount double to its (the court's) preliminary assessment of the probable amount that will compensate the Redds for damages for physical injury to property, and for substantial interference with its possession or use, found likely to be caused by the entry and activities (examinations, surveys, samplings, borings, etc.), an amount about which the Defendants make no showing whatsoever (*compare* Doc. 1 *with* Doc. 13). Defendants' calculation[15] improperly includes expected future condemnation damages (*see, e.g.,* Doc. 13, at 2 ("Defendants are only asking for proper compensation and payment not only in the disruption of their peaceful use and enjoyment of the property, but also in any condemnation action that may follow.")). And since the removing Defendants have cited no applicable caselaw, or otherwise established, that the amount placed in issue by Gulfstream's application for order permitting entry is inextricably tied to or informed by the fair market value of the subject property, they simply cannot rely on the fair market value of the property to satisfy the amount in controversy requirement.[16]

---

[15]    The undersigned simply observes that the Defendants nowhere in their removal petition or their response in opposition to the motion to remand identify any amount of damages that would "flow" from the Plaintiff's pre-condemnation request to enter their property and perform examinations, surveys, and the like. The Defendants' failure in this regard certainly is a sufficient basis upon which to find that the Defendants have not carried their burden of establishing that the amount in controversy in this pre-condemnation action exceeds $75,000.

[16]    Even if fair market value of the subject property is a relevant consideration, the Defendants' removal of Gulfstream's application for order permitting entry would still be improvident in light of the Defendants' direct representation (made under penalty of perjury) in their motion to proceed without prepayment of fees, a document  filed concomitant with the filing

(Continued)

*Roe*'s direction to use "judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements[,]" 613 F.3d at 1062, is not an invitation to speculate as to amount in controversy. And, yet, this is what the Court would be doing if it agreed with the removing Defendants' conclusory and speculative statements that the amount in controversy exceeds the jurisdictional minimum.[17] Keeping in mind the narrow construction afforded the removal statute, Defendants must still carry their burden to prove that a Plaintiff's suit—in this case, a pre-condemnation action for entry upon property to perform examinations, surveys, etc.— more likely than not exceeds $75,000. The Redds have failed to shoulder that burden.

## CONCLUSION

Based upon the foregoing it is clear that the application for order permitting entry, filed by Gulfstream Natural Gas System, LLC in the Circuit Court of Mobile County, Alabama, contains no grounds upon which this Court might exercise subject-matter jurisdiction and, therefore, is it **RECOMMENDED** that Plaintiff's motion to remand (Doc. 6) be **GRANTED** and that this cause be remanded to the Circuit Court of Mobile County, Alabama from whence it came.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it

---

of the notice of removal, that the estimated value of the subject property (both parcels) is $12,500.00 (Doc. 2, at 2 & 4).

[17] The undersigned's judicial experience and common sense, instead, dictates that the case stated in Gulfstream's application for an order permitting entry does *not* meet federal jurisdictional requirements.

must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of August, 2019.

 s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**